# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CWCAPITAL ASSET MANAGEMENT
LLC SOLELY IN ITS CAPACITY AS
SPECIAL SERVICER FOR LASALLE
BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR THE REGISTERED
HOLDERS OF LB/UBS COMMERCIAL
MORTGAGE TRUST 2001-C2,
COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2001-C2,

       Plaintiff,

       v.

CHICAGO PROPERTIES, LLC, JOE
MCCRAY, DELORES MCCRAY, and
BLOCKBUSTER, INC.,

       Defendants.

No. 07 C 5029
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

## I.  OVERVIEW

Plaintiff CWCapital, a mortgage servicer, filed a complaint against Defendant mortgagor

Chicago Properties, its owners Joe and Delores McCray ("the McCrays") and Defendant tenant

Blockbuster alleging the following counts: (1) breach of note by willful misconduct against

Chicago Properties; (2) breach of note by acceptance of rent more than one month in advance

against Chicago Properties; (3) breach of guaranty by willful misconduct against the McCrays;

(4) breach of guaranty by acceptance of rent more than one month in advance against the

McCrays; (5) breach of the Subordination, Non-disturbance and Attornment Agreement

("SNDA") by lease modification without consent against Blockbuster; and (6) breach of the SNDA by payment of rent more than one month in advance against Blockbuster.

Defendant Blockbuster filed a counterclaim against Plaintiff alleging breach of the SNDA, and a cross claim for indemnification under the lease against Chicago Properties and the McCrays. Defendants Chicago Properties and the McCrays filed a counterclaim against CWCapital alleging breach of note, tortious interference and fraud.

Over the course of two days in January 2009, I presided over a bench trial, and now I must determine whether the Defendants and Plaintiff are liable for breach, whether Plaintiff is entitled to fees regardless of whether it prevails, whether Blockbuster is entitled to fees if it prevails and whether Plaintiff has standing to bring its claim.

## II. FINDINGS OF FACT

Plaintiff in this case, CWCapital, is a special servicer for LaSalle Bank National Association, Trustee for the Registered Holders of LB/UBS Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2001-C2 ("the Trust"). The Trust is the current owner and holder of a mortgage note ("Note") dated January 3, 2001, in the amount of $618,000 and executed by Insite Chicago (Addison/Milwaukee), LLC ("Insite"). As security for the Note, Insite executed a mortgage granting a first priority security interest in property located at 3592 North Milwaukee Avenue, Chicago, Illinois. Beginning in 1999, Insite leased this property to Blockbuster, Inc. As part of the lease, Blockbuster executed an SNDA between itself, Insite, and the mortgage lender. The SNDA requires Blockbuster to pay rent directly to the mortgage holder upon written demand, prohibits payment of rent more than one month in advance, and states that the mortgagee is not "bound by any amendment or modification of the

2

Lease which reduces the term of the Lease or Tenant's monetary obligations thereunder hereafter made without Lender's prior written consent."

In September of 2002, Chicago Properties assumed all of Insite's obligations under the loan. By July of 2006, before its lease ended, Blockbuster had vacated the property. On July 18, 2006, Bryan Stevenson, assistant general counsel for Blockbuster, called Michael McGregor, of CWCapital to notify him about a proposed settlement agreement between Blockbuster and Chicago Properties. McGregor told Stevenson that the terms of any such settlement would need to be submitted in writing. In response, Blockbuster sent a letter containing the proposed settlement terms to James Hilliard, counsel for Chicago Properties, and Hilliard immediately faxed the letter to McGregor. The letter confirmed that Blockbuster had agreed to pay the McCrays $161,233.13 in exchange for a full and final release of claims, the dismissal of a pending suit in Cook County, and signing of a lease termination agreement. Nowhere did the letter state that Blockbuster would provide a substitute tenant for the vacant space.

Once McGregor learned of the terms, he informed McCray by phone that the Trust would not consent to the settlement. By July 24, Hilliard acknowledged the Trust's objection in a letter sent to the Trust. On August 1, McGregor faxed a letter to Hilliard explaining that CWCapital would not consent to the settlement because it would decrease "the collateral value of the loan." That same day, the Trust received an email from McCray acknowledging receipt of the letter, and explaining that they were "going ahead" with the proposed settlement. On August 7, 2006, Blockbuster wired $161,233.13 to the McCrays as part of the settlement.

On August 9, 2006, Blockbuster received a letter from CWCapital stating its opposition to the settlement, and demanding that Blockbuster make all future payments under the Lease

directly to the Trust, as required by the SNDA. The Trust also sent a letter to Chicago Properties demanding the immediate turnover of any amount paid by Blockbuster in excess of its usual monthly rent and asserting that failure to do so constituted a default under the Mortgage. On October 4, 2006, the Trust declared an event of default. Chicago Properties has continued to make its monthly mortgage payments.

In 2006, the gross annual rent due under the Lease was $122,760, resulting in a monthly obligation of $10,230. As of August 7, 2006, the Lease had 46 remaining monthly payments and a total remaining obligation of $470,580. Plaintiff claims that it is entitled to this sum, plus $383,500[1] from Chicago Properties, totaling $854,080.40. Plaintiff has elected it remedies pursuant to a breach of contract theory of damages, and presented no evidence that the collateral at issue was impaired.

In response to the complaint, Defendant Blockbuster filed a counterclaim against Plaintiff alleging breach of the SNDA by joining Blockbuster in this suit, and a cross claim for indemnification under the lease against Chicago Properties and the McCrays. Defendants Chicago Properties and the McCrays filed a counterclaim against CWCapital alleging breach of note, tortious interference and fraud.

## III.  CONCLUSIONS OF LAW

### A. Blockbuster's Liability

CWCapital maintains that Blockbuster breached the SNDA by modifying the lease without CWCapital's consent and paying rent more than one month in advance. However,

---

[1] This figure includes attorneys' fees and does not reflect application of payments made.

Blockbuster cannot be held liable under the SNDA. Although the SNDA contains a provision that states that CWCapital is not bound by the settlement agreement, the contract does not vest Plaintiff with substantive rights to enforce the lease between Blockbuster and the McCrays in the context of this case. Indeed, the SNDA specifically provides for limited circumstances when CWCapital can enforce the lease and can pursue damages against Blockbuster. Pursuant to the SNDA, the only occasions in which CWCapital can step into the McCrays' shoes is: (a) if CWCapital becomes owner of the property; (b) if the property is sold by reason of foreclosure and CWCapital then becomes the owner; or © if the property is transferred to CWCapital by deed in lieu of foreclosure. It is then, but only then, that CWCapital obtains the right to collect rent or otherwise enforce the lease against Blockbuster. From the time the lease termination agreement went into effect through the time of trial, the McCrays have continued to make their monthly mortgage payment, and CWCapital has neither become owner nor transferee. Under the contract, CWCapital cannot enforce the lease against Blockbuster at this time.

It should be noted that the Mortgage requires the assignment of all Mortgagor's rights and interests in all current and future leases and rents. Upon an Event of Default, license granted to Mortgagor to manage the mortgaged property is revoked, and Mortgagee is immediately entitled to possession of all rents, regardless of whether the Mortgagee enters upon or takes control of the mortgaged property. Under the SNDA, the lease is subordinate to the Mortgage, and the Mortgagee is not "bound by any amendment or modification of the Lease which reduces the term of the Lease or Tenant's monetary obligations thereunder [ ] made without Lender's prior written consent." This however, does not affect CWCapital's substantive rights under the SNDA. Even were Mortgagee bringing suit pursuant to the Mortgage as an assignee of Mortgagor's rights,

there is nothing left for the Trust to step in and enforce. The lease was effectively terminated with Blockbuster's payment, leaving Chicago Properties with no enforceable rights. The Mortgagee may not be bound by the lease termination agreement, but Chicago Properties is, and the Mortgagee as assignee of Mortgagor's rights can only enforce the rights of the Mortgagor.

Furthermore, Blockbuster did not violate CWCapital's August 7 directive to pay all future rent to it. First, the wire transfer was made two days prior to receiving the written instruction and therefore was not made in the face of the instruction. Second, the payment was in settlement of litigation – a lease termination payment and not a rent payment, as discussed *infra*. After the settlement, no more rent payments were made. For these reasons, Blockbuster is not liable to CWCapital under the SNDA.

## B. Chicago Properties' Liability

CWCapital maintains that Chicago Property and the McCrays breached the Note and Guaranty by committing willful misconduct where they collected rent more than one month in advance, terminated the lease without prior written consent, and failed to turn over the money paid to them by Blockbuster. CWCapital also claims that Chicago Properties and the McCrays breached the Note and Guaranty by accepting rent made more than one month in advance. Neither Chicago Properties nor the McCrays is liable under the agreements.

## 1. Willful misconduct

Plaintiff argues that the McCrays and Chicago Properties have committed willful misconduct by failing to turn over any lease termination payment to the Trust for deposit in the Rollover Escrow Fund, as required by the Mortgage. According to Plaintiff, the court's suggestion that "willful misconduct" requires an element of malice or illegality is incorrect.

Illinois courts have instead applied the ordinary meaning of the word "misconduct":

"mismanagement" or "intentional wrongdoing." Plaintiff cites *Scherer v. Rockwell Intern.*

*Corp.*, 766 F. Supp. 593, 602 (N.D. Ill. 1991), in which the court applied the definition found in

Webster's Dictionary. 1: mismanagement esp. of governmental or military responsibilities; 2:

intentional wrongdoing: deliberate violation of a rule of law or standard of behavior esp. by a

government official: MALFEASANCE; 3 (a): bad conduct: improper behavior; (b): sexual

immorality; esp: ADULTERY. However, the cases cited by Plaintiff do not support the

proposition that every breach of contract should be viewed as willful misconduct.

Plaintiff cites two cases where a former employee sued his employer following

termination of employment. In *Scherer*, the court held that "misconduct," in the context of an

employment contract provision setting forth grounds for termination, encompassed sexual

harassment, which exposed the employer to the potential for liability under federal law. 766 F.

Supp. 593, 602-03 ("In the plain and ordinary meaning of the term, no employee could rationally

believe that such behavior that violates federal law as well as company policy would not be

understood as 'misconduct.'"). In *De Bono v. Chicago Sun-Times, Inc.*, the court held that

plaintiff's failure to repay a $14,000 loan from employer and a $3500 loan from his subordinate

was misconduct where the employee was an officer, fiduciary, and member of the management

committee. 707 F. Supp. 363, 366-67 (N.D. Ill., 1989). Neither of these cases dictates that any

voluntary breach of contract rises to the level of misconduct. In each of these cases, the court

analyzed the alleged misbehavior in the context of what is reasonable in the employee/employer

relationship, and whether plaintiff could be terminated for it. In neither case was the misconduct

the breach of contract provision.

And since that is what Plaintiff alleges here - essentially a breach of contract - the McCrays cannot be held personally liable under the Guaranty, nor can Chicago Properties be liable under the Note. The McCrays did not go behind CWCapital's back in making a deal with Blockbuster. In fact, Hilliard called McGregor and told him the proposed terms. The McCray's acceptance of the settlement money from Blockbuster was part of the proposal, and Chicago Properties continued to make its mortgage payments. Even if Chicago Properties and the McCrays breached their agreements, their actions do not rise to the level of willful misconduct.

## 2. Misapplication of rents

Plaintiff maintains that the payment to the McCrays was "rent," and that the rent should have been paid to Plaintiff. However, the Lease defines "Rent" to include base rent and all additional charges for taxes incurred and utilities. The payment made to the McCrays was none of these. It was a settlement payment to terminate the lease, not a payment made pursuant to the lease.[2] For this reason, the McCrays cannot be personally liable for the misapplication of rents.

## C. Damages

To recover for breach of contract under Illinois law, a party must prove the existence of a valid contract, performance by the plaintiff, breach by defendant, and resulting damages. *Zirp-Burnham, LLC v. Terrell Assoc., Inc.*, 826 N.E.2d 430, 439 (Ill. App. 2005). Plaintiff claims that as a matter of contract it is entitled to $854,080.40 which includes the sum of the rental payments owed after the Trust's demand on August 7, 2006, as well as other figures, such as attorneys' fees, which are presently subject to dispute. The McCrays argue that Plaintiff has failed to prove

---

[2] Plaintiff takes the position that the same payment is both a lease termination payment as well as rent. Because payment by Blockbuster terminated the lease, it cannot be considered the payment of rent.

damages.  Plaintiff elected to proceed solely on its theory of contract damages, and offered no evidence on any alleged diminished value of its collateral.  Any damage award on this basis would be speculative at this point.  Further, Plaintiff's insistence on contract damages is misplaced, since it cannot credibly argue that it has somehow suffered $432,532.00 in damages while the McCrays have continued to make their mortgage payments.

Furthermore, the McCrays contend that the Trust has not actually been "damaged" as to the amount of the settlement.  Although the Mortgage requires any lease termination payments to be turned over to the Trust for deposit into the Rollover Escrow Fund, the Trust was not damaged by the McCrays' failure to abide by this provision, since the McCrays continued to pay the rent and any other monies it owed to the Trust.  The Rollover Escrow Fund, to which the McCrays make monthly contributions, exists for the purpose of compensating the McCrays for "expenses reasonably incurred by Mortgagor for new Leases entered into by Mortgagor . . ." including "for tenant improvements and leasing commissions, the newly executed Lease, extension, renewal, or modification. . ."  "All such expenses shall be approved by Mortgagee in its sole discretion."  The Mortgage also states: "Provided that no Event of Default shall exist and remain uncured, Mortgagee shall make disbursements as requested. . . "  Furthermore, any interest earned on the fund is mandated to become part of the fund and dispersions.  The McCrays argue that they did not damage the Trust, but rather served as the de facto stakeholders, doling out the monthly money.  While this may be true, the McCrays' failure to turn over the settlement payment resulted in an Event of Default under the Mortgage, and such an occurrence automatically accelerates the Note.  Under these circumstances, Plaintiff was damaged in the amount remaining

on the Note, an amount that it has the right to collect immediately upon the occurrence of an event of default.

**D. Chicago Properties' Counterclaims**

Defendants Chicago Properties and the McCrays filed counterclaims alleging breach of note, tortious interference with prospective business advantage, and common law fraud. Defendants are seeking damages for mental and emotional distress, expenditures associated with a failed refinancing effort and attorneys' fees. For the following reasons, Defendants' counterclaims fail.

**1. Breach of Note**

Chicago Properties and the McCrays, in their First Amended Counterclaim, allege that Plaintiffs: (1) violated the non-recourse provision of the mortgage note by seeking damages from Defendants; (2) improperly charged to Defendant's loan balance $60,000 in fees and expenses; (3) improperly applied monthly payments to expenses; (4) refused to release reserve funds; and (5) acted in bad faith by refusing to provide information during Defendants' attempted refinancing, and attempting to obtain Defendants' signatures on an agreement which Plaintiff knew Defendants could not sign, thereby delaying the refinancing effort. However, because Defendants fail to allege any breach of the note by the Trust or to identify any legally cognizable damages, they cannot succeed on their counterclaims.

To recover for breach of contract under Illinois law, a party must prove the existence of a valid contract, performance by the plaintiff, breach by the defendant, and resulting damages. *Zirp-Burnham, LLC v. Terrell Associates, Inc.*, 826 N.E.2d 430, 439 (Ill. App. 2005). In this case, both parties allege that they performed according to the Note, and that the other party breached the Note.

Defendants claim that as a result of the alleged breaches, they have (1) suffered anxiety and mental distress from the threatened loss of a large portion of their retirement fund value; (2) incurred expenses associated with the failed refinancing effort; and (3) incurred attorneys' fees associated with both the refinancing attempt and the litigation. Plaintiffs argue that none of these alleged damages are legally cognizable, and thus the breach of note claim fails. First, under Illinois law, damages for breach of contract will not be awarded as compensation for mental suffering, "except where the breach was wanton or reckless and caused bodily harm, or where the defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss." *Petrowsky v. Family Service of Decatur, Inc.*, 518 N.E.2d 664, 668 (Ill. App. 1987). Although Defendants allege that Plaintiff acted wantonly and recklessly in delaying and detracting from the refinancing effort, Defendants fail to allege any bodily harm. Defendants also allege that Plaintiff should have anticipated Defendants' emotional distress resulting from a breach of the mortgage agreement, however, Defendants' alleged distress is based on threatened pecuniary loss - the loss of their retirement fund value. Mental suffering due to pecuniary loss is insufficient to allege mental suffering damages for a breach of contract claim.

Next, Defendants allege damages based on their failed refinancing effort. Defendants claim that they entered into an oral agreement with Plaintiff, offering to refinance the Note in exchange for Plaintiff's agreement to waive prepayment penalties and expenses, and that the Plaintiff's conduct caused the lender to withdraw its commitment. Oral modification of the Note's terms is not permitted by the Note itself, nor, as Plaintiff points out, under the Illinois Credit Act. 815 Ill. Comp. S. 160/2. These damages are not, then, the result of a valid contract, as required for a breach of note claim.

Defendants suggest that these damages also result from Plaintiff's breach of the implied covenants of good faith and fair dealing through conduct which disrupted the refinancing attempt. Under Illinois law, the implied duties of good faith and fair dealing are rules of construction; they are not independent of the contract. *Harris v. Adler School of Professional Psychology*, 723 N.E.2d 717, 721 (Ill. App. 1999). Defendants fail to point to any specific contractual provision that was breached. Because Defendants' bad faith allegations are not rooted in the written contract, and because the Note may not be amended or modified orally, Defendants fail to provide any valid contractual basis for its claims. Therefore, this allegation of damages is not cognizable under a breach of contract theory and is insufficient to state a claim.

Finally, Defendants allege attorneys' fees associated with Plaintiff's lawsuit, citing the rule of mutuality. Defendants argue that where a contract provides that a party may be awarded attorneys' fees upon a successful claim of breach against the party, the reverse is impliedly true. This, however, is a misstatement of the rule. The rule requires only that either both parties are bound by an agreement or that neither is bound. It does not require that the parties incur the same obligation. *See S.J. Groves & Sons Co. v. State*, 444 N.E.2d 131, 134 (Ill. 1982).

Because Defendants fail to plead or prove cognizable damages, their breach of note claim is dismissed.

## 2. Tortious Interference With Prospective Business Advantage

In order to successfully allege tortious interference with prospective business advantage under Illinois law, Defendants must allege their reasonable expectancy of entering into a business relationship, Plaintiff's knowledge of this expectancy, Plaintiff's intentional interference preventing the establishment of the relationship, and damages caused by the interference. *Crinkley v. Dow Jones and Co.*, 385 N.E.2d 714, 720 (Ill. App. 1978). The tort requires that

Plaintiff has "taken some action toward a third party which caused the third party not to do business with [Defendants]." *Automated Concepts Inc. v. Weaver*, 2000 WL 1134541 *7 (N.D. Ill. Aug. 9, 2000) (citation omitted). This action toward the third party "must be some sort of direct interference with the relationship between [Defendants] and [the lender], such as disparagement or other wrongful conduct." *Id.*

Defendants allege that in late 2005 and early 2006, they offered to refinance the mortgage note on the property in exchange for the Trust's agreement to waive prepayment penalties and expenses. According to the McCrays, CWCapital attempted to obtain the McCrays' signatures on an agreement which CWCapital knew the McCrays could not sign, and repeatedly refused to provide information and documents solely within its possession. The McCrays' attempt to refinance was unsuccessful. Defendants allege that they had a reasonable expectation of entering into a relationship with a lender in order to refinance the mortgage. They claim that Plaintiff was aware of this expectation and its refusal to provide information and documents in its possession, led to the lender's withdrawal. However, Defendants fail to allege direct action toward the lender and that Plaintiff's conduct prevented the establishment of the relationship. Defendants further allege that Plaintiff tortiously interfered with Defendant McCray's attempts to procure a new tenant by refusing to release funds that McCray intended to use to improve the property. Again, Defendants fail to allege any direct action toward any specific third party. Therefore, Defendants' tortious interference claim is dismissed.

**3. Common Law Fraud**

In order to successfully assert a claim for common law fraud, Defendants must allege "(1) a false statement of material fact; (2) [Plaintiff's] knowledge that the statement was false; (3) [Plaintiff's] intent that the statement induced [Defendant] to act; (4) [Defendants'] reliance

13

upon the truth of the statement and (5) [Defendants'] damages resulting from reliance on the statement." *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. 2003). Defendants make two allegations pertaining to possible false statements. They first allege that Plaintiff billed Defendants for unjustified fees and expenses, that Plaintiff knew it was not entitled to these fees, and that Plaintiff intended Defendant McCray to rely on these statements. Plaintiff, however, contends that Defendants have denied their liability for these fees and have not made any additional payments as a result of these charges. Defendants have not alleged any reliance or resulting damages relating to these statements.

Defendants also allege that Plaintiff orally agreed to waive the prepayment penalties in exchange for Defendants' McCray offer to refinance and that the promise to waive was false. However, "a promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a false representation as will constitute fraud." *Goldberg v. Goldberg*, 431 N.E.2d 1060, 1063 (Ill. App. 1981). As Plaintiff correctly notes, any offer to waive the prepayment penalties is a statement of future intent and is insufficient to support a claim of fraud. Therefore, Defendants' common law fraud claims must fail.

**E. Blockbuster's Counterclaim**

In its counterclaim against Plaintiff Blockbuster alleges that Plaintiff breached paragraph 9 of the SNDA by improperly joining Blockbuster as a defendant in this suit. Paragraph 9 states: "Tenant shall not be joined as a party/defendant in any action or proceeding which may be instituted or taken by reason or under any default by Landlord in the performance of the terms, covenants, conditions and agreements set forth in the Mortgage." In this case, Plaintiffs have not joined Blockbuster in an action against Landlord for breach of the Mortgage, but rather for breach of promissory note and breach of guaranty. Furthermore, Counts V and VI are pled

14

against blockbuster itself for alleged breaches of the SNDA, rendering paragraph 9 inapplicable here.

Although paragraph 9 does not apply, paragraph 8 of the SNDA does. Paragraph 8 states:

Should any action or proceeding be commenced to enforce any provisions of this Agreement or in connection with its meaning, the prevailing party in such action shall be awarded, in addition to any other relief it may obtain, its reasonable costs and expenses, not limited to taxable costs and reasonable attorney's fees.

Blockbuster has prevailed in this action to enforce provisions of the SNDA. As the prevailing party, Blockbuster is entitled to reasonable fees and costs, as discussed *infra*.

**F. Blockbuster's Crossclaim**

Since Blockbuster is not liable to Plaintiff, its crossclaim for indemnification against Chicago Properties and the McCrays is dismissed. Blockbuster has prevailed on the issue of breach and its counterclaim for attorneys' fees and costs against Plaintiff is discussed below.

**G. Standing**

Having so found, I address an issue that, customarily, would have been a threshold issue. I did not treat it as such, since I initially denied Defendant's motion for summary judgment on the issue of Plaintiff's lack of standing. Plaintiff did not file a cross motion for summary judgment on the matter, and no further evidence of Plaintiff's standing was offered at the hearing. Plaintiff should not be criticized for this, however, because it is clear that summary judgment should have been granted on the issue of standing. This is the reason for my order of consideration of issues.

The McCrays argue that Plaintiff has failed to demonstrate standing to bring suit, and the action must therefore be dismissed. Plaintiff acknowledges that the Trust is the real party in interest here, but argues that it is the Trust's special servicer pursuant to a Pooling and Servicing

Agreement ("PSA").  Under this agreement, Plaintiff claims, the special servicer has the authority to do "any or all things" in connection with servicing the loans, and that it shall not "without the Trustee's written consent. . . initiate any action, suit or proceeding solely under the Trustee's name without indicating the [] Special Servicer's [ ] representative capacity…" Plaintiff is not listed as a party to the PSA, but it has provided an affidavit from Trustee in which he testifies that CWCapital is the current special servicer under the Pooling and Servicing Agreement, and that Trustee ratifies CWCapital's status as special servicer for the Trust in connection with the litigation.

Although Plaintiff submitted the Pooling and Servicing Agreement ("PSA"), the McCrays argue that no reading of it supports the conclusion that Plaintiff has standing, since the title page lists a number of enterprises, including LaSalle Bank, none of which is a party to any of the loan documents at issue.  Plaintiff presents no writing setting forth its authority, by assignment or otherwise, to initiate this action against Defendants.  Furthermore, Plaintiff is bound, McCrays argue, by its interrogatory answers on the issue, which were essentially refusals to answer on the grounds that the information is "confidential business information."[3]  At no time did Plaintiff supplement his interrogatory answers.

Because Plaintiff failed to supplement its interrogatory answer, I decline to consider the theory under which it purports to have standing.  Federal Rule of Civil Procedure 26(e)(1)(A) requires a party supplement a discovery request "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional

---

[3]  Defendants' Interrogatory No. 2 is an inquiry as to the identity of the individual who authorized the Plaintiff to bring suit against the McCrays.  Defendants' Interrogatory No. 3 is an inquiry as to the identity and location of the individual who has "custody of any document . . . authorizing the Plaintiff to initiate the instant lawsuit."  Plaintiff refused to answer both questions on the ground that the information requested was "confidential business information."

or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Plaintiff was aware as early as October 31, 2008, that a standing challenge would be mounted by the McCrays. Plaintiff provided the PSA and affidavit in response to McCray's motion for judgment on the pleadings.[4] This response was filed on January 19, 2009, three days before the start of trial. Defendants had no opportunity to look into this theory of standing or to prepare a rebuttal. *See Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856, 858 (7th Cir. 1977) (refusal to allow plaintiff to present at trial its alternative theory for liability was proper where plaintiff failed to supplement an interrogatory answer in which plaintiff made no mention of a second theory of liability because defendants were surprised at trial and prejudiced because they were unable to prepare a case to rebut it).

In its complaint, Plaintiff stated that the Trust is the real party in interest here, and that it is named as plaintiff in its capacity as special servicer. But Plaintiff submitted no writing setting forth its authority, by assignment or otherwise, to initiate this action against Defendants. Because Plaintiff failed to supplement its interrogatory answer on the issue, I decline to consider the theory for standing that Plaintiff sets forth in its Response to Defendants' Motion for Judgment on the Pleadings, and I find that Plaintiff has failed to prove standing. For these reasons, suit against the McCrays and Chicago Properties must be dismissed.

---

[4] Although I denied Defendant's motion, I made no finding as to the issue of standing.

## H. Costs and Fees

Plaintiff cites three documentary sources for fee award – the Note, the Mortgage, and the Guaranty.[5]  Because Plaintiff does not have standing to sue, there can be no award of fees to Plaintiff.[6]

Plaintiff contends that it need not succeed in this litigation in order to recover fees and costs.  Plaintiff cites several cases in support of its position, but none is particularly helpful to

---

[5] The Note states:

> In the event that it should become necessary to employ counsel to collect or enforce the Debt or protect or foreclose the security therefore, Maker also shall pay on demand all costs of collection incurred by Payee, including attorneys' fees and costs reasonably incurred for the services of counsel whether or not suit be brought.

The Mortgage states:

> All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 22 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

Paragraph 22 of the Mortgage authorizes the Trust, upon the occurrence of an Event of Default, to "take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof…"

The Mortgage also contains an indemnity provision:

> Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, demands, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage…; (b) any failure on the part of the Mortgagor to perform or comply with any of the terms of this Mortgage;…(m) the claims of any lessee of any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising as a consequence of any Lease.

Under the terms of the Guaranty, the McCrays are personally liable for:

> (a) any and all Losses (hereinafter defined) imposed on or incurred by or asserted against Lender and directly or indirectly arising out of or in connection with any of the following:.. ii. the gross negligence or willful misconduct of the Borrower relating to the Loan… vi. the misapplication or conversion by the Borrower of…(D) any Rents paid more than one month in advance…

"Losses" is broadly defined to include, among other things, attorneys' fees and all costs of enforcement.

[6] If Plaintiff did have standing, it would likely be eligible to collect reasonable fees and costs from Chicago Properties since there was an Event of Default under the Mortgage and the indemnity provisions of the Mortgage and Note apply.  However, the McCrays would not be personally liable for "Losses" under the Guaranty since there has been no willful misconduct and no misapplication of Rents, as discussed *supra*.

Plaintiff.  First, Plaintiff cites *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518 (7th Cir. 1999) and *Eastern Trading Co. v. Refco, Inc.*, No. 97 C 6815, 2001 WL 869626 (N.D. Ill. Aug. 1, 2001).  In *Medcom*, the Seventh Circuit provided some guidance in analyzing indemnification clauses, explaining that "the initial question is whether the outlay is one 'resulting from' [defendant's] misrepresentation or breach of the agreement."  200 F.3d at 521.  In *Eastern Trading*, the court noted that "[i]t is not necessary that all of the endeavors in that activity be successful but they must have resulted from pursuing some purpose for which the [contract] provides indemnification."  2001 WL 869626, at *6 (citation omitted).  However, in both of those cases, the parties seeking attorneys' fees prevailed in some portion of the underlying litigation.  As the Seventh Circuit noted in *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 627 (7th Cir. 2000), "[e]ither [counter-plaintiff] prevailed on its claim [ ] and was therefore entitled to reasonable attorneys' fees, or [counter-defendant] prevailed and [counter-plaintiff] therefore was entitled to no attorneys' fees."  While the party petitioning for fees in both cases was unsuccessful in its pursuit of certain claims, the fact that it was successful in certain claims involved in the litigation makes it difficult to see how these cases support Plaintiff's argument.[7]

Next, Plaintiff cites *In re Marriage of Pylawka*, for the proposition that "There is no prohibition against awarding attorney fees to an unsuccessful litigant. . . ." 661 N.E.2d 505, 510 (Ill. App. 1996).  However, in divorce cases, "[t]he propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration

---

[7] Plaintiff also cites *Carefree Foliage, Inc. v. American Tours, Inc.*, 505 N.E.2d 1039 (Ill. App. 1987), and *Petkus v. St. Charles Savings & Loan Association*, 538 N.E.2d 766 (Ill. App. 1989), two more cases in which the party petitioning for fees prevailed in all or the majority of claims in the underlying litigation.

of the other spouse to do so." *Id.* This case is not such a case, and it is unclear that the foundations underlying these policies apply outside of the divorce context. Moreover, the court in *Pylawka* remanded the issue of attorneys' fees "in view of the fact that the" other substantive issues in the case were remanded and judgment against the unsuccessful spouse was reversed.

"Where attorney fees are authorized by contract, a court may properly award them according to the specific language of the contract." *Petkus*, 538 N.E.2d at 769 (citing *Ferrara v. Collins*, 457 N.E.2d 109, 113 (Ill. App. 1983)). "While it is true . . . that contract provisions regarding attorney's fees will be strictly construed, those provisions are to be enforced in the discretion of the trial court." *Ferrara*, 457 N.E.2d at 113 (citation omitted)). Plaintiff has pointed to no case where a non-prevailing party has been awarded attorneys' fees, neither generally, nor in the lender-borrower context. Although there is no prohibition against awarding attorneys' fees to an unsuccessful party, public policy militates against such an award in this case. To award attorneys' fees to a lender that does not prevail would open the door to strong-arming borrowers with the threat of litigation in the context of a relationship in which the lender almost necessarily has access to greater financial resources than the borrower. For these reasons, Plaintiff is not entitled to an award of fees and costs.

Blockbuster claims that it is entitled to an award of attorneys' fees against Plaintiff based on paragraph 8 of the SNDA, which states: "Should any action or proceeding be commenced to enforce any provisions of this Agreement or in connection with its meaning, the prevailing party in such action shall be awarded, in addition to any other relief it may obtain, its reasonable costs and expenses, not limited to taxable costs and reasonable attorney's fees." As the prevailing party, I grant Blockbuster's request to present a petition for payment of fees and costs.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's suit is dismissed for lack of standing, Defendants the McCrays and Chicago Properties' counterclaims are dismissed, and Defendant Blockbuster's crossclaim is dismissed.  Because Blockbuster has prevailed in this action to enforce provisions of the SNDA, its request to present a petition for fees and costs is granted.

**ENTER:**

James B. Zagel
United States District Judge

DATE:  September 11, 2009